IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL ANDREW,              :
      Plaintiff             :
                           :
      v.                    :      CIV. NO. AMD 04-3772
                           :
KEVIN B. CLARK, et al.,      :
      Defendants          :

...o0o...

MEMORANDUM OPINION

This is a civil rights action instituted pursuant to 42 U.S.C. § 1983 by a police official

who principally contends that he was the victim of unlawful retaliation in violation of his

rights under the First Amendment.[1] Now pending is defendants' motion to dismiss the

federal claims pursuant to Fed.R.Civ.P. 12(b)(6).[2] The filing of the motion to dismiss was

_____

[1]In an effort to shore up his claims, plaintiff has sought leave to file successive
amendments to the complaint. I shall grant leave to file the second amended complaint,
as my view of the legal sufficiency of the various complaints is the same. In the second
amended complaint, plaintiff asserts 11 separately-numbered counts. Counts I, III, and V,
purport to allege First Amendment claims pursuant to 42 U.S.C. § 1983; counts VII and
IX purport to allege Fourteenth Amendment procedural due process claims pursuant to
42 U.S.C. § 1983. The remaining claims are state law claims.

[2]Under the well-known standard:
> A Rule 12(b)(6) motion should only be granted if, after accepting all well-
> pleaded allegations in the plaintiff's complaint as true, it appears certain
> that the plaintiff cannot prove any set of facts in support of his claim
> entitling him to relief. *See Edwards v. City of Goldsboro,* 178 F.3d 231,
> 244 (4th Cir.1999). Furthermore, the "Federal Rules of Civil Procedure do
> not require a claimant to set out in detail the facts upon which he bases his
> claim." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80
> (1957). Rather, Rule 8(a)(2) requires only a "short and plain statement of
> the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.
> 8(a)(2).

*Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 325-26 (4th Cir.2001).

prompted by the Supreme Court's decision last term in *Garcetti v. Ceballos*, --- U.S. ----, 126 S.Ct. 1951 (2006). Concluding as I do that plaintiff has failed to state a cognizable constitutional claim, the ostensible federal claims shall be dismissed with prejudice and the non-diverse state law claims shall be dismissed without prejudice for lack of subject matter jurisdiction.

## I.

Accepting as true the well-plead allegations of the second amended complaint, plaintiff Michael Andrew ("Andrew") was employed by the Baltimore City Police Department ("BCPD") from June 1973 until his termination in September 2004. (He has been reemployed by BCPD during the pendency of this case). On December 8, 2003, during plaintiff's tenure as Major and commanding officer in the Eastern Police District, an incident in the Eastern District occurred during which BCPD tactical officers shot and killed an elderly man who had barricaded himself inside his apartment.

Andrew was deeply disturbed by the manner in which the barricade incident was handled. On December 17, 2003, nine days after the incident, plaintiff prepared what he describes as an "internal memorandum." The "internal memorandum" subject line reads, "Barricade Incident on December 8, 2003; 1401 E. Oliver Street (ED) Apt#  [sic] 203; Central Complaint Number 033L04138; Shooting Death of Mr. Cephus Smith." The "internal memorandum" header states, "From: Commanding Officer, Eastern District" and is likewise signed, "Michael J. Andrew, Major; Commanding Officer; Eastern District."  In extensive detail, and drawing on his 17 years as "a member of the command staff" and the

"many barricade situations" he had handled over his 30-year career, plaintiff's "internal memorandum" outlines the events comprising the barricade incident, Andrew's "serious concerns" regarding BCPD's handling of the incident, and a testament that plaintiff's suggestions contained within the "internal memorandum" "[are] proffered to prevent undo criticism for [our] department." Plaintiff addressed and transmitted the "internal memorandum" to the police commissioner "via the chain of command."

Sometime later, after the police commissioner failed to respond to his "internal memorandum," plaintiff provided a copy of the "internal memorandum" to a reporter for *The Baltimore Sun*. On January 6, 2004, the paper published a news article "regarding the shooting based on the view of the Plaintiff."[3] Following the publication of the news article, the BCPD subjected plaintiff to an Internal Affairs investigation and charged him with giving confidential information to the media. Plaintiff alleges, and for purposes of the pending motion to dismiss it is deemed true, that he was thereafter terminated in retaliation for providing a copy of the "internal memorandum" to the media. Plaintiff also alleges his

---

[3]A copy of the article is attached to the original complaint in this case. Its headlines read: "Tactics of officers faulted in city killing," "Commander's memo says officers stormed in too soon." The body of the article identifies Andrew as the author and describes the source of information as an "internal memo written by a top commander." The article also notes that Andrew " had declined to comment on the memo and referred all questions" to the official spokesperson for the BCPD.

Although Andrew scrupulously avoided attaching a copy of the "internal memorandum" to his complaints, because the substance of, as well as extensive quotations from, the "internal memorandum" are recounted in the copy of the news article that he *did* attach to the complaint, the actual "internal memorandum" may properly be considered on a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6). *See, e.g., Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir.1999).

due process rights were violated because he was not afforded a pre-termination hearing or, in the alternative (assuming that he was not entitled to a pre-termination hearing as a Major in the BCPD), because he was not first demoted to a civil service rank and *then* afforded a hearing.

## II.

*Garcetti* held that, as a matter of law, when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes and therefore are not insulated from "managerial discipline" based on such statements. 126 S.Ct. at 1961 (significantly modifying the longstanding test of public employee First Amendment protection derived in *Pickering v. Bd. of Education,* 391 U.S. 563 (1968)). In underscoring the difference between speech made as a citizen versus speech made as a public employee, the Court stated that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 1960.

*Garcetti* outlined two inquiries necessary to determine whether a public employee's speech is protected. *Id.* at 1958. The first requires determining whether the employee spoke as a citizen on a matter of public concern. *Id.* If the answer is "yes," the possibility of a First Amendment claim arises; the question is whether the governmental employer had "adequate justification" for treating the employee differently from any other member of the public. *Id.* If, however, the answer is "no," if the employee was not speaking as a citizen on a matter of public concern, then no First Amendment claim arises out of the employer's reaction. *Id.*

-4-

"[I]nterest balancing plays no role when the speech in question is part of the employee's official duties." *Mayer v. Monroe County Community School Corp.*, --- F.3d --- , --- , 2007 WL 162833, *1 (7th Cir. 2007).

Plaintiff concedes that, as Eastern District Commander, he was "routinely required to provide an overview, findings and recommendations as to all significant incidents including shootings that occurred within his district." In his complaints, plaintiff further avers that, during the barricade incident, he "called for a 'Technical Assistance Response Unit' (TARU) to look inside the apartment and gather additional intelligence" and "instructed . . . officers to continue attempts to negotiate with Mr. Smith." Irrespective of whether these activities comprised the "sum total of the responsibilities the [p]laintiff had at the barricade situation," plaintiff, at the time of the incident, served as Eastern District Commander. As such, in his capacity as Eastern District Commander, plaintiff was acting within the purview of his "official responsibilities" when he prepared an "internal memorandum" that dealt exclusively with the plaintiff's professional assessment of the propriety of the BCPD's handling of the barricade incident that occurred within the Eastern District, his district, and his own candid recommendations for the formulation of better protocols for use in the future.

As a matter of law, in preparing the "internal memorandum" addressing BCPD's handling of the barricade incident and transmitting it "up the chain of command" to the police commissioner, plaintiff was not speaking as a "citizen on a matter of public concern," but as BCPD's Eastern District Commander. As a matter of law, plaintiff's "speech" was

pursuant to his "official duties" as a command level official of the BCPD. Aside from the obvious physical characteristics of the memorandum – such as a header that states "From: Commanding Officer, Eastern District" and a signature line that reads, "Michael J. Andrew, Major; Commanding Officer; Eastern District"-- the "internal memorandum" recaps in extensive detail the barricade incident in question; details what would be known only to a command official in the BCPD; and makes recommendations that only a command official of BCPD could make. The incident occurred within the Eastern District; as the Eastern District Commander, plaintiff was unequivocally interested in and had access to a trove of information relating to the barricade situation, even if, as he emphasizes, he was not the official in charge of all aspects of the BCPD's response to the incident.

The gravamen of plaintiff's claim seems to be that when he elected to "go public" by handing a copy of his "internal memorandum" to a representative of the media, he converted what is undeniably speech effected pursuant to his employment duties into "citizen speech" on a "matter of public concern." I can find nothing in *Garcetti* or in the more persuasively-reasoned cases that have interpreted *Garcetti* to support this view: that the Supreme Court's plain intention to carve out an enclave of unprotected speech by public employees is so limited. *Cf. Haynes v. City of Circleville, Ohio*, --- F.3d ----, 2007 WL 174114 (6th Cir. 2007); *Casey v. West Las Vegas Ind. School District,* --- F.3d --- , 2007 WL 172223 (10th Cir. 2007); *Mayer*, *supra*; *Green v. Bd. of County Comm'rs*, 472 F.3d 794 (10th Cir. 2007); *Battle v. Bd. of Regents*, 468 F.3d 755 (11th Cir. 2006) (per curiam); *Mills v. City of*

*Evansville*, 452 F.3d 646 (7th Cir .2006).[4]

The "internal memorandum" was not a mere "letter to the editor" by a member of the BCPD, even assuming that had Andrew chosen to "go public" in such manner, doing so would have invigorated his ostensible First Amendment claim. While plaintiff attempts to characterize the "internal memorandum" (coupled with his verbal act of delivering it to a media source) as speech that falls outside the purview of plaintiff's "official responsibilities," in fact, the very means by which it was prepared and the very subject matter it concerned, coupled with plaintiff's overt involvement in the incident in question, together render *Garcetti* wholly applicable. *Cf. Casey*, 2007 WL 172223, *3 n.5 (noting that the Supreme Court has instructed lower courts "to view the facts from a 'practical' perspective" in

---

[4]The facts here echo those in *Casey v. West Las Vegas Ind. School District,* --- F.3d --- , 2007 WL 172223 (10th Cir. 2007). In *Casey*, a school superintendent's contract was not renewed, in part because she made critical statements regarding, *inter alia*, (1) the school board's lax administration of the district's Head Start Program and (2) the board's failure to comply with New Mexico's "open meetings" law. *Id*. at *7. The school board failed to take action to correct the deficiencies identified by the former superintendent. Thereafter, the plaintiff provided information about these matters to "outsiders," allegedly prompting the nonrenewal of her contract.

The Tenth Circuit held that the speech to "outsiders" (like the statements to the school board itself) concerning the Head Start Program irregularities could not support a First Amendment retaliation claim because administration of the Head Start Program was encompassed by the former superintendent's official duties; her speech "pursuant to her official duties" did not lose its character as such simply because she disseminated it beyond official workplace channels. *Id*. at *8. In contrast, because the former superintendent's official duties did not touch or concern the school board's obligation to comply with the open meetings law, her complaint to the state attorney general reporting the alleged violations of that law by the school board was *not* "pursuant to her official duties" and the *Pickering* balancing test applied. *Id*. at *8-9.

In the case at bar, the "internal memorandum" prepared by Andrew never lost its character as speech pursuant to his official duties simply by virtue of the wider dissemination he elected to give it after his recommendations were ignored by the police commissioner.

determining "the appropriate scope of an employee's official duties"). No reasonable juror could reasonably find that the "internal memorandum" was other than "speech pursuant to plaintiff's official duties." Accordingly, the First Amendment claim fails as a matter of law.[5]

### III.

Andrew claims his due process rights were violated because the BCPD denied him a pre-termination hearing or, in the alternative (assuming that as a Major he was not entitled to a pre-termination hearing), because BCPD failed first to demote him to a civil-service-protected rank and *then* affording him a pre-termination hearing. Plaintiff's due process claim fails.

The Supreme Court has made clear repeatedly that the initial inquiry into any procedural due process challenge is whether a plaintiff has been deprived of a "protected interest in 'property' or 'liberty.'" *E.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citations omitted). Addressing the right to procedural due process as it applies to public employees in Maryland, *Luy v. Baltimore Police Department*, 326 F.Supp.2d 682,

---

[5]To be sure, plaintiff attempts to broaden and multiply his ostensible First Amendment claim by alleging that he was retaliated against because he *threatened* to file a lawsuit (Count III) and because he in fact *filed this lawsuit* (Count V). But plaintiff had already been removed as Commander in the Eastern District when he threatened to sue and he had been terminated when he sued; as a matter of law, even apart from the fact that plaintiff has been reinstated, he fails to state a claim in these regards. In any event, the clear weight of authority holds that the right to petition is limited to matters of public concern, *Kirby v. City of Elizabeth City,* 388 F.3d 440, 448-49 (4th Cir.2004)(collecting cases), *cert. denied*, 126 S.Ct. 2350 (2006); *Hoffman v. Baltimore Police Dept.,* 379 F.Supp.2d 778, 794 (D.Md. 2005), and it is undeniable that in the case at bar, Andrew's "petition claims" concern matters of a wholly personal dimension, i.e., his desire to seek damages and obtain injunctive relief aimed at getting back his job.

689-90 (D. Md 2004), held that:

> an employee of a state or local government has a protected property interest in continued public employment only if he can show a legitimate claim of continued entitlement to his job under state or local law . . . . A public employee in an at-will position cannot establish such an entitlement, and thus cannot claim any Fourteenth Amendment due process protection . . . . As a general rule, state and local employees are considered at-will under Maryland law.

*Id.* at 689-90 (internal citations omitted). Thus, where a plaintiff cannot demonstrate a "legitimate claim of continued entitlement to his job," as is the case with Andrew, no colorable due process claim may sustained for failure to afford a terminated employee a pretermination hearing.

In this case, the relevant "Law Enforcement Officers' Bill of Rights" excludes from due process protection "an individual who serves at the pleasure of the Police Commissioner of Baltimore City." MD. CODE ANN., PUB. SAFETY, §3-101(e)(2)(i); *see also* Md. Code of Public Local Laws of Baltimore City, Art. 4 § 16-11(same). Thus, Andrew had no property interest in his tenure as a Major in the BCPD sufficient to sustain a procedural due process claim.

Andrew attempts to avoid this outcome with two arguments. First, Plaintiff contends that, as a "command level official" he had "a right to a fair and impartial investigation and/or return to his highest civil service rank" based on what plaintiff describes was a "mutual implied understanding [that] existed within" the BCPD. Such a "mutual implied understanding" may give rise to a state claim but will not support a claim of constitutional entitlement.

In the alternative, plaintiff argues that as a law enforcement officer, he *would have* enjoyed a property interest in continued employment at a lower rank and that therefore, because of the status he *would have occupied* had he been demoted, as he claims he *should have been*, he has a viable procedural due process claim.

I disagree. This contention is founded upon a provision of the Maryland Code of Public Local Laws of Baltimore City, Art. 4, §16-10(d). Section 16-10(d) provides in pertinent part that a police officer who is appointed by the police commissioner to a rank above captain shall "be returned to the rank from which he was elevated" "upon [the] termination of his service in such position." While there may be some uncertainty as to how best to reconcile the state law exclusion from due process protection of such command level appointees with their seeming guarantee of a lower-level job upon the termination of their appointment to a command level position, *see Franklin v. Clark*, 454 F. Supp. 2d 356,  (D. Md. 2006), what is clear is that there is no *federal procedural due process issue thus presented*.  That is to say, if §16-10(d) really means what it seems to say, then Andrew was not entitled to a *hearing*, he was entitled to a *job*. In short, he may have had available to him a state law claim for reinstatement to a lower rank, but there are no facts surrounding such a claim to which any procedural due process protections would attach and plainly there are no disputed facts requiring an *adjudication*.[6]

---

[6]Thus, Andrew has proceeded on the assumption that had he been demoted rather than terminated, the commissioner would have nevertheless wished to terminate his employment. But nothing in the allegations made by Andrew say such a thing, and there is no reason to suppose that, Andrew having been removed from the command level, any

(continued...)

Thus, again, the LEOBR is what governs. Andrew's job entitlement claim cannot be evaluated based on a hypothetical "lower" status he never occupied simply because he argues he should have been "returned" to such status (as a matter of state law) instead of being terminated. As a command level official, he served at the pleasure of the commissioner.  In the exercise of the commissioner's discretion, Andrew was terminated. Accordingly, plaintiff fails to state a procedural due process claim.

IV.

For the reasons set forth above, defendants' motion to dismiss plaintiff's federal claims shall be granted with prejudice. As complete diversity of citizenship is lacking, I shall decline to exercise supplemental jurisdiction and shall dismiss without prejudice the remaining, state law claims. 28 U.S.C. § 1367(c)(3); *see generally Andrews v. Anne Arundel County, Md.,* 931 F.Supp. 1255, 1267-68 (D.Md.1996), *aff'd,* 114 F.3d 1175, 1997 WL 321573 (4th Cir.) (table), *cert. denied,* 522 U.S. 1015 (1997). An order follows.


Filed: February 5, 2007                          /s/_____

                                                 Andre M. Davis
                                                 United States District Judge

_____

        (...continued)
further disciplinary action would have been imposed upon him. Moreover, even if one
indulges Andrew's assumption that he still would have been subjected to discipline, there
clearly is no reason to suppose that the commissioner would then have proceeded without
affording him the hearing to which he would then have been entitled under the plain
language of controlling state law. Accordingly, Andrew's attempt to transform a state law
claim for reinstatement to a lower rank into a federal procedural due process claim fails.

-11-